Robert VALDEZ, Plaintiff–Appellee and Cross–Appellant,

v.

CITY AND COUNTY OF DENVER, a municipal corporation, J.D. MacFarlane, Manager of Safety and Ex–Officio Sheriff of the City and County of Denver, and Captain Herrera, Defendants–Appellants,

and

Joyce Neville, Director of the Department of Health & Hospitals, City and County of Denver, Seymour Sundell, Staff Medicine Coordinator, Denver General Hospital, and J. Smith, Defendants–Cross–Appellees,

and

John Does 1–3, Defendants.

Nos. 86–2719, 86–2771.

United States Court of Appeals, Tenth Circuit.

July 6, 1989.

Rehearing Denied Aug. 16, 1989.

---

I.

Plaintiff-appellee, Robert Valdez (Valdez), instituted this action for damages pursuant to 42 U.S.C. § 1983 against the City and County of Denver, and various law enforcement officials and medical personnel employed by the municipality. The record reveals that on March 1, 1985, Valdez was present as a spectator in state traffic court. When Denver County Court Judge Larry Lopez–Alexander said something to a defendant with which Valdez disagreed, Valdez exclaimed "bullshit," and the two proceeded to exchange words. Judge Lopez–Alexander subsequently held Valdez in contempt and ordered him to await sentencing outside the courtroom. Captain Herrera and three unidentified deputies from the sheriff's department promptly arrested Valdez. Later that day, Judge Lopez–Alexander issued a mittimus directing the municipality to retain custody of Valdez. From March 1 through 14, Valdez was incarcerated pursuant to Judge Lopez–Alexander's order in the Denver County Jail under the administrative supervision of J.D. MacFarlane. Valdez was originally scheduled to appear on the latter date before Judge Lopez–Alexander for sentencing on the contempt citation, but because of complications in the case, the judge postponed his appearance date until March 27. Prior to that date, however, Valdez was released from custody upon a writ of habeas corpus issued from the state district court.

In his complaint, Valdez alleges, *inter alia*, false arrest and imprisonment in violation of the fourth and fourteenth amendments against defendants-appellants, Captain Herrera and J.D. MacFarlane respectively. Upon completing discovery, Herrera and MacFarlane moved for summary judgment asserting their entitlement to absolute "quasi-judicial" immunity, or in the alternative qualified immunity. The district court rejected both grounds and denied the motion. Both officers appeal.[1]

Peter H. Ney, Littleton, Colo., for plaintiff-appellee and cross-appellant.

Theodore S. Halaby (Robert M. Liechty with him on the brief) of Halaby & McCrea, Denver, Colo., for defendants-appellants and defendants-cross-appellees.

Before LOGAN, SEYMOUR and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

In this case, we hold that an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.

---

1. Valdez has cross appealed from the district court's dismissal under Fed.R.Civ.P. 12(b)(6) of the various named medical personnel who examined him during his confinement. At oral

Our jurisdiction to review the denial of an absolute immunity claim arises under the "collateral order" doctrine. *Nixon v. Fitzgerald,* 457 U.S. 731, 741–43, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). The denial of a qualified immunity claim is reviewable as a "final decision" under 28 U.S.C. § 1291. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Our review is *de novo. Eastwood v. Department of Corrections,* 846 F.2d 627, 629 (10th Cir.1988).[2]

## II.

■ The Supreme Court has endorsed a "functional" approach to questions concerning the application of common-law tort immunities to individuals in § 1983 actions: "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 542, 544, 98 L.Ed.2d 555 (1988) (emphasis in original). The extent of government officials' immunity depends upon the likely effect their exposure to liability will have on the operation of effective government in a particular context, balanced against the potential for a deprivation of individual rights in that context. *E.g., Doe v. McMillan,* 412 U.S. 306, 320, 93 S.Ct. 2018, 2028, 36 L.Ed. 2d 912 (1973); *Chavez v. Singer,* 698 F.2d 420, 422 (10th Cir.1983).[3]

■ Courts have long recognized that a litigant dissatisfied with the outcome of judicial proceedings will oftentimes accuse his "adversaries" of constitutional infirmities. *See, e.g., Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 348, 20 L.Ed. 646 (1871). Because "'controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree' ... the common law provided absolute immunity from subsequent damages liability for *all* persons—governmental or otherwise—who were integral parts of the judicial process." *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983) (quoting *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978)) (emphasis added). Accordingly, the Supreme Court has recognized not only the absolute civil immunity of judges for conduct within their judicial domain, *Pierson v. Ray,* 386 U.S. 547, 554–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967), but also the "quasi-judicial" civil immunity of prosecutors, *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976), grand jurors, *id.* at 423 n. 20, 96 S.Ct. at 991, witnesses, *Briscoe,* 460 U.S. at 345–46, 103 S.Ct. at 1120–21, and agency officials, *Butz,* 438 U.S. at 512–13, 98 S.Ct. at 2913–14, for acts intertwined with the judicial process.[4]

Recognizing that the power to execute judicial decrees is no less an important and

argument, however, Valdez' counsel conceded that we do not have subject-matter jurisdiction over his client's cross-appeal, and we therefore order it dismissed.

2. Although named in the notice of appeal with Herrera and MacFarlane, the City and County of Denver acknowledges that as a municipality sued in its official capacity, it is unable to assert the defense of immunity and is therefore not properly a party to this appeal. Defendants-appellants' response brief at 7. *See Owen v. City of Independence,* 445 U.S. 622, 635–58, 100 S.Ct. 1398, 1407–19, 63 L.Ed.2d 673 (1980) (municipality has no qualified immunity from liability under § 1983); *Monell v. Department of Social Serv.,* 436 U.S. 658, 701, 98 S.Ct. 2018, 2041, 56 L.Ed.2d 611 (1978) (municipality sued under § 1983 is not entitled to absolute immunity).

3. In *Henriksen v. Bentley,* 644 F.2d 852, 855–56 (10th Cir.1981), we recognized this balancing test while noting that "[i]mmunity which de-

rives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aide of the judge is involved." Because of an undeveloped factual record in that case, however, we were unable to determine the precise scope of immunity to be afforded a clerk of court charged with denying plaintiff access to the courts.

4. In *Tripati v. United States Immigration and Naturalization Serv.,* 784 F.2d 345, 347–48 (10th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988), we relied on these authorities and extended absolute immunity to probation officers who purportedly made false statements in pretrial bond and presentence reports. Because their reports were "intimately associated" with the judicial decision-making process, the probation officers were absolutely immune from a civil suit for damages. *Id.* at 348; *accord Hughes v. Chesser,* 731 F.2d 1489, 1490 (11th Cir.1984).

integral part of the judicial process than the roles of those officials previously afforded absolute immunity, we held in *T & W Inv. Co., Inc. v. Kurtz*, 588 F.2d 801, 802–03 (10th Cir.1978), that a receiver named as a defendant in a corporation's civil rights action was a court officer who shared the judge's immunity to the extent he carried out the orders of his appointing judge. Our sister circuits addressing the question likewise agree with virtual unanimity that court officers sworn to execute court orders are shielded by absolute immunity in the performance of their duty. *E.g., Coverdell v. Department of Social and Health Serv.*, 834 F.2d 758, 764–65 (9th Cir.1987) (social worker accorded absolute quasi-judicial immunity from suit arising out of worker's apprehension of child pursuant to court order); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238–39 (7th Cir.1986) (sheriff acting pursuant to court order directing enforcement of judgment entitled to absolute immunity for allegedly wrongful conduct); *Property Management & Invs., Inc. v. Lewis*, 752 F.2d 599, 602–04 (11th Cir.1985) (receiver of corporation protected by judicial immunity in carrying out orders of appointing judge); *Tymiak v. Omodt*, 676 F.2d 306, 308 (8th Cir.1982) (sheriff who evicted plaintiff from home in compliance with court order was absolutely immune from suit for damages); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981) (court clerks have absolute immunity in actions for damages based upon ministerial conduct required by court order); *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir.1980) (court clerk and state hospital superintendent acting at behest of judge enjoyed judicial immunity); *Waits v. McGowan*, 516 F.2d 203, 206 & n. 6 (3d Cir.1975) (judicial immunity extends to police officers engaged in ministerial functions under court's direction); *Fowler v. Alexander*, 478 F.2d 694, 696 (4th Cir.1973) (sheriff and jailer who confined plaintiff in executing a court order were absolutely immune from suit); *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 72–73 (2d Cir.1968) (court-appointed receiver enforcing explicit order of court was immune from liability).

Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. *Henry*, 808 F.2d at 1239. If losing parties were free to challenge the will of the court by threatening its officers with harassing litigation, the officers might neglect the execution of their sworn duties. As the Ninth Circuit aptly reasoned: "The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." *Coverdell*, 834 F.2d at 765. Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process.

Despite Valdez' contrary assertion, a qualified immunity for officials following court orders will *not* protect the judicial process by permitting the dismissal of insubstantial claims prior to trial. Even with the adoption of the objective qualified immunity standard in *Harlow v. Fitzgerald*, 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–38, 73 L.Ed.2d 396 (1982), the applicability of the defense turns on the fact-specific question of whether reasonable officers could have believed their conduct to be proper in light of the "clearly established" law. Factual disputes would require discovery if not a trial. *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3040, 3042 n. 6, 97 L.Ed.2d 523 (1987). Moreover, in most instances what is "clearly established" would be subject to differing views. *See Garcia v. Miera*, 817 F.2d 650, 656–57 (10th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). Interlocutory appeals would inevitably follow. The Supreme Court has acknowledged that "even the processing of a complaint that is dismissed before trial consumes a considerable amount of time and resources." *Briscoe*, 460 U.S. at 343, 103 S.Ct. at 1119. The expense of litigation which officials like the defendants Herrera and MacFarlane would incur, the diversion of their attention from more socially productive obligations and the deterrence of qualified individuals from accepting public

employment are not insignificant considerations.[5]

To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable.[6] Officials must not be called upon to answer for the legality of decisions which they are powerless to control. We explained in *Kurtz*, 588 F.2d at 802, that it is simply unfair to spare the judges who give orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a "lightning rod for harassing litigation aimed at judicial orders." *Id.* And such suits, the large portion of which would be frivolous, would be certain to arise repeatedly. At a time when the federal district courts are burdened with increasing amounts of simply unwarranted litigation, this court will not permit a defendant to "transform his resentment at being prosecuted into the ascription of improper and malicious actions" on the part of judicial officers merely performing their assigned functions. *Imbler*, 424 U.S. at 425, 96 S.Ct. at 992.

Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both. *Kurtz*, 588 F.2d at 802. Officials employed to implement facially valid court orders could choose: They may disregard the judge's orders and face discharge, or worse yet criminal contempt, or they may fulfill their duty and risk being haled into court. Judge Learned Hand recognized years ago that the fear of suit will "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363

(1950). Officials such as the defendants must not be required to act as pseudo-appellate courts scrutinizing the orders of judges. *Henry*, 808 F.2d at 1239. The public interest demands strict adherence to judicial decrees. The Supreme Court has stated that "[p]ublic officials ... who fail to ... implement decisions when they are made do not fully and faithfully perform the duties of their offices." *Scheuer v. Rhodes*, 416 U.S. 232, 241–42, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974). Absolute immunity will ensure the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them.

To be sure, absolute immunity always comes at a price. The individual wrongly deprived of liberty or property by a judge's decision will be unable to pursue a remedy under the civil rights statute. But the public interest in the enforcement of court orders that is essential to the effective functioning of our judicial process far outweighs the benefit to be gained by providing the defendants Herrera, MacFarlane and others like them with only limited immunity. Judges, all of whom take an oath to uphold the constitution and are bound by codes of judicial conduct, are not often likely to act maliciously from the bench. Moreover, unscrupulous judges are not totally insulated from the public will. Even judges are subject to professional discipline, constitutional or statutory removal, or in more egregious cases, criminal prosecution under 18 U.S.C. § 242 for willful deprivations of constitutional rights. *Imbler*, 424 U.S. at 429, 96 S.Ct. at 994. Nor is an aggrieved party usually without recourse to forms of relief other than § 1983. In most cases, the defendant should appeal: "The proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal

---

5. As this case illustrates, officials may need the benefit of discovery to establish their absolute immunity from suit where the plaintiff claims their actions were inconsistent with court orders. This, however, is the exception, not the rule. Plaintiffs and their counsel who fail to make reasonable inquiry into the facts before proceeding against officers for enforcing court orders subject themselves to the real possibility of monetary sanctions. *See* Fed.R.Civ.P. 11.

6. Of course, an official performing ministerial tasks with less than due care may be liable for damages because such a rule does not measurably impair the effective functioning of government. *Jackson v. Kelly*, 557 F.2d 735, 737 (10th Cir.1977) (en banc).

that order and the underlying judgment, not to sue the official responsible for its execution." *Henry*, 808 F.2d at 1239. These and other safeguards are sufficient to decrease the necessity of civil rights actions against those officials who have no control over a judge's conduct. *See Butz*, 438 U.S. at 512, 98 S.Ct. at 2913 (insulation of judges from political influence, importance of precedent in resolving controversies, adversary nature of the process, and correctability of error on appeal are just a few of the many checks on malicious action by judges).

We believe precedent, notions of fairness based upon individual responsibility, a desire to preserve the effective and independent operation of the judiciary, and the great wealth of common law experience all support our decision. Because the record viewed as a whole indicates that every action of the defendants Herrera and MacFarlane to which Valdez objects was taken under the direction of a state court judge, the judgment of the district court is reversed and this cause remanded with instructions to dismiss the complaint as to Herrera and MacFarlane in their individual capacities on the basis of absolute immunity.[7]

REVERSED and REMANDED.

---

**7.** The decisions in *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), and *Kilbourn v. Thompson*, 103 U.S. (13 Otto.) 168, 26 L.Ed. 377 (1880), are inapposite. In those cases, the Court held that the immunity provided legislators under the Constitution's speech and debate clause, U.S. Const. art. I, § 6, was unavailable to certain legislative employees who implemented the legislators unconstitutional orders and resolutions. In *Gravel v. United States*, 408 U.S. 606, 620–21, 92 S.Ct. 2614, 2624–25, 33 L.Ed.2d 583 (1972), the Court explained that these decisions did not adopt "the simple proposition that immunity was unavailable to congressional ... employees because they were not Representatives or Senators." Rather, because no threat to the legislative *function* was present, the speech and debate clause protections did not attach. The case at bar is markedly different because failure to provide the defendants with absolute immunity would directly threaten the effective and independent operation of the judiciary. A contrary holding not only might "color a court's judgment in some cases," *Kurtz*, 588 F.2d at 802, but also would jeopardize the entire decision-making process.