Joseph W. **NELSON** and Mary D. Nelson, Plaintiffs,

v.

Michael P. **WALSH,** Sheriff of New Castle County, Lester **Mealey,** Deputy Sheriff, Elizabeth Lake, Deputy Sheriff, New Castle County Sheriff's Dept., New Castle County Police Department, Edward **Sommers,** Patrolman, Thomas **Donovan,** Officer, and New Castle County, Defendants.

No. Civ.A. 98–624–JJF.

United States District Court, D. Delaware.

July 29, 1999.

---

309

Leo John Ramunno, Wilmington, DE, for Joseph W. Nelson, Mary D. Nelson, plaintiffs.

Stephanie D. Kinder, New Castle County Law Dept., New Castle Corporate Commons, New Castle, DE, for Michael P. Walsh, Lester Mealey, Elizabeth Lake, New Castle County Sheriff's Dept., New Castle County Police Department, Edward Sommer, Thomas Donovan, New Castle County, defendants.

## OPINION

FARNAN, Chief Judge.

Presently pending in this civil rights action brought pursuant to 42 U.S.C. § 1983 is the Defendants' Motion For Summary Judgment (D.I.31).[1] For the reasons stated below, the Court will grant the Defendants' Motion.

## I. BACKGROUND

This action arises out of an attempt by members of the New Castle County Sheriff's Department to execute a civil judgment against Plaintiff Mary Nelson. On November 6, 1996, Defendants Mealey and Lake reported to the residence of the Plaintiffs, Mary and Joseph Nelson, in order to levy and impound two of the Plaintiffs' vehicles pursuant to a Writ of Attachment Fifa. 10 Del.C. § 5041. Upon realizing the Defendants' purpose, Mrs. Nelson contacted her attorney by telephone and, pursuant to his advice, requested that Defendant Mealy allow her to take the paperwork authorizing the seizure inside her residence so that she could read it to her attorney over the telephone (D.I. 1, at ¶ 7). Mealy refused and after

---

[1]. The Defendants in this action are New Castle County Sheriff Michael P. Walsh ("Walsh"), Deputy Sheriff Elizabeth Lake ("Lake"), Deputy Sheriff Lester Mealy ("Mealy"), the New Castle County Sheriff's Department, the New Castle County Police Department, Patrolman Edward Sommers ("Sommers"), Officer Thomas Donovan ("Donovan"), and New Castle County. The Court shall hereinafter refer to Defendants Walsh, Lake and Mealey collectively as the "Sheriff's Department Defendants" and Defendants Sommers and Donovan collectively as the "Police Department Defendants."

several more requests for the Writ, Mrs. Nelson snatched the paperwork from Mealy's hands and took it inside her residence (*Id.*). According to the Defendants, Mr. Nelson then began shouting at Mealy (D.I. 33, at A–45, A–60). Mr. Nelson admits to calling Mealy "a few names," including "asshole," and comparing Defendant Mealy's conduct to that of Hitler and the Gestapo (*Id.* at A–36, A–59–60). Because of the escalating tenor of events, Defendant Lake called the New Castle County Police Department to request assistance in executing the Writ (*Id.* at A–46). The Defendants allege that Mr. Nelson was yelling and insulting Mealy when Donovan and Sommers, officers with the New Castle County Police Department, arrived (*Id.* at A–56). As the events progressed, the Plaintiffs' neighbors had congregated outside the Nelson house to see what was happening (*Id.*).

Mrs. Nelson eventually exited her house and was handcuffed and placed under arrest for offensive touching[2] (*Id.* at A–8). When Mrs. Nelson complained that her handcuffs were too tight, the Defendants responded to alleviate her discomfort.[3] Contemporaneously, Mr. Nelson was arrested and handcuffed for disorderly conduct (*Id.* at A–2). Shortly thereafter, Mr. Nelson complained to the Defendants of difficulty breathing and chest pains, in response to which an ambulance was called to transport him to the hospital (*Id.*). On May 30, 1997, the Plaintiffs were tried and acquitted on charges of Disorderly Conduct in the Court of Common Pleas of the State of Delaware (*Id.* at A–43).

As a result of the foregoing events, the Plaintiffs filed this § 1983 action, alleging that their rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated. The Plaintiffs further allege that they have suffered "painful and permanent injuries" as a result of the Defendants' conduct, including injury to "the arms, hands, wrists and heart, mental and emotional anguish, loss of good reputation and integrity and embarrassment" (D.I. 1, at ¶ 15).

## II. LEGAL STANDARD

Summary judgment is appropriate where admissible evidence fails to demonstrate a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56 requires summary judgment where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the non-moving party. *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1127 (3d Cir.1995).

## III. DISCUSSION

By their Motion, the Defendants contend that they are entitled to summary judgment because, *inter alia,* (1) Defendants Walsh, Lake and Mealey are absolutely immune from individual liability for violation of the Plaintiffs' due process rights; (2) the Plaintiffs have failed to demonstrate the existence of an unconstitutional custom or policy amounting to deliberate indifference; (3) the Plaintiffs have failed to rebut the Defendants' showing of probable cause to arrest the Plaintiffs; (4) the Plaintiffs have failed to demonstrate that excessive force was used; (5)

---

**2.** This charge was amended to disorderly conduct at Mrs. Nelson's arraignment.

**3.** Although there is no dispute that the Defendants responded to Mrs. Nelson's complaint, there is a dispute as to what action was taken.

Mrs. Nelson contends that Defendant Donovan loosened the handcuffs (D.I. 33, at A–31), while Defendant Lake asserts that Defendant Donovan changed the handcuffs (*Id.* at A–47).

the Plaintiffs have failed to adequately allege a violation of the Fifth and Sixth Amendments; and (6) the Eighth Amendment does not provide a basis for relief because the Plaintiffs were not prisoners.

### A. Absolute Immunity

■ At the outset, the Defendants argue that the Sheriff's Department Defendants are absolutely immune from individual liability for due process claims arising out of their attempt to execute the Writ. "Absolute immunity ... discharges an official completely from all liability resulting from the exercise of official power without regard to negligence, malice, or bad faith on the part of the official in performing his duties." [4] *Shipley v. First Federal Savings and Loan Ass'n of Del.*, 619 F.Supp. 421, 438 (D.Del.1985); *see Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1984) (absolute immunity is not available as a defense to official capacity claims).

■ Courts have held that officials acting pursuant to a facially valid court order have a quasi-judicial absolute immunity from damages for actions taken to execute that order. *See Patterson v. Von Riesen*, 999 F.2d 1235, 1240 (8th Cir.1993) (prison wardens were absolutely immune from liability for continuing to incarcerate prisoner pursuant to valid court order in spite of prisoner's claim that he was wrongfully convicted); *Villanueva v. County of Montgomery*, 1994 WL 396368, at *2 (E.D.Pa. July 29, 1994) (sheriff's deputies absolutely immune from liability arising from execution of a facially valid bench warrant); *Shipley*, 619 F.Supp. at 439 (prothonotary and sheriff entitled to absolute immunity for their actions in connection with entry of default judgment in scire facias sur mortgage proceeding). In holding quasi-judicial officers absolutely immune, courts recognize that the power to execute judicial decrees is an integral part of the judicial process. *See Patterson*, 999 F.2d at 1240 ("The fearless and unhesitating execution of court orders is necessary if the court's authority and ability to function are to remain uncompromised.") (citation omitted).

In the instant case, the Sheriff's Department Defendants received a praecipe for a Writ of Attachment Fifa pursuant to 10 *Del.C.* § 5041 to satisfy a debt owed from entry of a judgment against Mrs. Nelson in the Delaware Superior Court on August 7, 1996 (D.I. 33, at A–76). Section 5041 mandates that "every fieri facias shall actually be returned by the sheriff to whom it was delivered," and section 5045 provides that should the Sheriff fail to comply with section 5041, the sheriff "shall answer for the debt, damages and costs in the fieri facias." 10 *Del.C.* §§ 5041, 5045.

The Plaintiffs challenge the validity of the Writ on two grounds. First, the Plaintiffs argue that, under Delaware law, jointly held property is not subject to attachment when the judgment is in only one of the parties' names. The Plaintiffs assert that because the vehicles subject to the levy were registered to "Joseph Nelson and/or Mary Nelson," seizure of such vehicles was unlawful. Second, the Plaintiffs argue that the Writ was invalid because it wrongly identified the party to whom the civil judgment was awarded. The Plaintiffs do not argue, however, that the Writ was *facially* invalid. Rather, the Plaintiffs argue that the Defendants have "some duty to check information provided to them" (D.I. 36, at 5).

The Court concludes that, based on the record evidence presented, the Defendants do not have a duty to independently verify the accuracy or the legality of the Writ of Attachment Fifa. To the contrary, Delaware statutory law requires them to execute the writ or be liable for the debt contained therein. 10 *Del.C.* § 5945. It is

---

4. While absolute immunity may be a defense to monetary liability, it cannot be asserted to bar injunctive relief. *See Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

**313**

well-settled that "[o]fficials ... must not be required to act as pseudo-appellate courts scrutinizing the orders of judges." *Patterson,* 999 F.2d at 1241 (quoting *Valdez v. City & County of Denver,* 878 F.2d 1285, 1289 (10th Cir.1989) (citation omitted)). The Plaintiffs have not introduced evidence disputing the facial validity of the Writ. Accordingly, the Court concludes that the Sheriff's Department Defendants are absolutely immune from individual liability arising out of their efforts to execute the Writ.

### B. Official Capacity Claims

The Plaintiffs also assert § 1983 claims against the Sheriff's Department, New Castle County, the New Castle County Police Department, and against the Sheriff's Department Defendants and Police Department Defendants in their official capacities.[5]

■ In order to hold a municipal entity liable for a § 1983 violation, the plaintiff must prove that the alleged unconstitutional action executes or implements a policy or decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy. *Reitz v. County of Bucks,* 125 F.3d 139, 144–45 (3d Cir.1997) (citing *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018). In the absence of an unconstitutional policy, a municipality's failure to train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983. *Reitz,* 125 F.3d at 145 (citing *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). In order to successfully prove a failure to train claim, the plaintiff must establish that: (1) the failure to train amounts to deliberate indifference to the rights of persons with whom the municipal employees come into contact; and (2) the training deficiency actually caused the injury. *Reitz,* 125 F.3d at

145 (citing *City of Canton,* 489 U.S. at 388–391, 109 S.Ct. 1197).

■ On the record before the Court, the Plaintiffs have not introduced evidence: (1) indicating the existence of an unconstitutional custom or policy within any of the municipal entities named or (2) supporting their failure to train claims against such municipal entities. As in *Reitz,* the Plaintiffs have presented no evidence on the record to show that their alleged injuries resulted from the municipal entities' "deliberately indifferent failure" to train its employees. Nor have the Plaintiffs "identified the specific training which would have prevented the [alleged] deprivation of their constitutional rights [or] established that such training was not provided." *Reitz,* 125 F.3d at 145. Finally, even if the Plaintiffs could show that the actions of the individual Defendants violated their constitutional rights, they have presented no evidence that the conduct of the individual Defendants resulted from the municipal entities' failure to properly train the individual Defendants or that similar conduct has occurred in the past. *See id.*

Thus, the Court concludes that the Plaintiffs have failed to create a genuine issue of material fact as to either theory of municipal entity liability under § 1983. Accordingly, the Court will grant summary judgment in favor of New Castle County, the Sheriff's Department, the Police Department, the Sheriff's Department Defendants in their official capacity, and the Police Department Defendants in their official capacity.

### C. Individual Capacity Claims Against Police Department Defendants

The Plaintiffs have also named the Police Department Defendants in their individual capacities. Specifically, the Plaintiffs allege that the Police Department Defendants' conduct violated their Fourth

---

5. Suing a government official in his or her official capacity is equivalent to suing the government entity itself. *See Monell v. N.Y.*

*Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Amendment right to be free from false arrest and excessive force.

### 1. False Arrest

The Plaintiffs allege that the Police Department Defendants falsely arrested them for disorderly conduct. The proper inquiry in a § 1983 claim for false arrest is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense. *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988) (citations omitted). Under Delaware law, a person has committed the offense of disorderly conduct when that person "intentionally causes public inconvenience, annoyance or alarm to any other person, or creates a risk thereof by ... (b) making an unreasonable noise or an offensively coarse utterance, gesture or display, or addressing abusive language to any person present." 11 *Del.C.* § 1301. Probable cause is measured "by the totality of circumstances through a case by case review of the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *State v. Maxwell*, 624 A.2d 926, 928 (Del. Supr.1993).

In the instant case, the Defendants contend that the Plaintiffs created a disturbance when the Defendants attempted to execute the Writ, thereby committing the offense of disorderly conduct. Mr. Nelson admits to calling Defendant Mealy a "few names," including "asshole," and equating Mealy's conduct with that of the Gestapo (D.I. 33, at A–36, A–59–60). Further, the Defendants have presented evidence that such obscenities and name-calling were shouted by Mr. Nelson in the presence of the Plaintiffs' neighbors (D.I. 33, at A–11, A–16, A–66, A–68). The Plaintiffs have not introduced evidence to rebut the Defendants' showing and, in fact, have substantially admitted to the Defendants' account of the events. Accordingly, the Court concludes that probable cause existed to arrest Mr. Nelson for disorderly conduct.

Mrs. Nelson similarly created a disturbance and engaged in unreasonable conduct the night of her arrest. Mr. Nelson testified at the Plaintiffs' criminal trial that Mrs. Nelson was yelling and screaming at Mealy prior to arrest (D.I. 33, at A–60), and Mrs. Nelson admits that she snatched the Writ from Defendant Mealy's hands without his consent and absconded with it for a period of time (D.I. 33, at A–25). Again, the Plaintiffs have introduced no evidence to counter the Defendants' showing. On this record, the Court concludes that the Defendants have established that probable cause existed to arrest Mrs. Nelson for disorderly conduct.

Contrary to the Plaintiffs' argument, it is irrelevant that the Defendants initially attempted to charge Mrs. Nelson with offensive touching, rather than disorderly conduct. Under Delaware law, "[i]f a lawful cause of arrest exists, the arrest is lawful even though the officer charges the wrong offense or gives a reason that does not justify the arrest." 11 *Del.C.* § 1905. Accordingly, the Court will grant summary judgment in favor of the Police Department Defendants on the Plaintiffs' claims of false arrest.

### 2. Excessive Force

The Plaintiffs further allege that the Police Department Defendants used excessive force in making the instant arrests, as a result of which the Plaintiffs allege that they have "suffered, are suffering and will continue to suffer from painful and permanent injuries of the body and/or mind including, but not limited to injuries of the arms, hands, wrists and heart, and mental and emotional anguish" (D.I. 1, at ¶ 15).

In order to prevail on a Fourth Amendment excessive force claim, a plaintiff must demonstrate that the defendant's use of force was not "objectively reasonable." *Mellott v. Heemer*, 161 F.3d 117, 122 (3d Cir.1998) (quoting *Graham v. Con-*

*nor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Proper application of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Mellott,* 161 F.3d at 122 (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865). The United States Court of Appeals for the Third Circuit has additionally noted that it is important to consider how many individuals the officers confronted and whether "the physical force applied was of such an extent as to lead to injury." *Mellott,* 161 F.3d at 122 (quoting *Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir.1997)). The United States Supreme Court has counseled that, when balancing these factors, courts must remember that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Mellott,* 161 F.3d at 122 (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865).

 Considering the facts and circumstances of the instant case in light of these principles, the Court concludes that the Police Department Defendants' use of force was reasonable in response to the Plaintiffs' admitted conduct. As stated above, the Plaintiffs admit that one or both of them were yelling at the Defendants as the Defendants attempted to execute the Writ. Further, Mr. Nelson was barraging the Defendants with obscenities and name-calling, and Mrs. Nelson admits to snatching the Writ from Defendant Mealy's hands and returning inside her home with it. It is undisputed that, during the course of events, the neighbors had congregated outside to see what was occurring. When the officers attempted to handcuff Mrs. Nelson, she would not keep her hands

still.[6] The Court concludes that, considering the totality of the circumstances, it would be reasonable to perceive that Mrs. Nelson was resisting arrest. When Mrs. Nelson complained that the handcuffs were too tight, it is undisputed that they were either loosened or replaced in response to her complaint. After Mr. Nelson was arrested, he complained of difficulty breathing. In response, an ambulance was called and he was transported to the hospital.

Furthermore, the Plaintiffs have not presented any evidence to support their allegations that they have suffered and will continue to suffer from injuries as a result of the Defendants' use of force. In fact, Mr. Nelson has conceded that he is not permanently disabled and has not been treated for any injuries allegedly inflicted by the Defendants (D.I. 33, at A–41–42, A–67). Although the Plaintiffs need not prove permanent or severe injury in order to maintain an excessive force claim, the severity of the resulting injury is a factor to be considered in determining whether force used was unreasonable, and thus, excessive. *See Graham,* 490 U.S. at 393–94, 109 S.Ct. 1865. In response to the Defendants' Motion For Summary Judgment, the Plaintiffs have introduced no evidence relating to the extent, severity, or treatment of the alleged injuries. Rather, the Plaintiffs' response consists of the statement that "[t]here will be amply [sic] evidence to support the claims of excessive force and significant injury to Mrs. Nelson" (D.I. 36, at 12).

Rule 56(e) of the Federal Rules of Civil Procedure requires that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific

---

**6.** Mrs. Nelson has asserted that her failure to keep her hands still resulted from the fact that she was having difficulty maintaining her bal-

ance while she was being handcuffed (D.I. 33, at A–28).

facts showing that there is a genuine issue of material fact." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On the record presented, the Court concludes that the Plaintiffs have not adduced evidence sufficient to establish that the force used by the Police Department Defendants to arrest the Plaintiffs was excessive or unreasonable. Accordingly, the Court will grant summary judgment in favor of the Police Department Defendants as to the Plaintiff's excessive force claims.

### D. Fifth, Sixth, and Eighth Amendment Claims

Although the Plaintiffs allege "violations of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment[s] to the United States Constitution" (D.I. 1, at ¶ 1), the Plaintiffs present no facts or evidence in support of claims under the Fifth or Sixth Amendments. Accordingly, the Court will grant summary judgment in favor of the Defendants on those claims.

 Further, the Court concludes that the Eighth Amendment does not provide a basis for the Plaintiffs' claims. "The most accepted view of the application of the Eighth Amendment's proscription is that it only applies after conviction." *Patzig v. O'Neil,* 577 F.2d 841, 847 (3d Cir.1978) (citing *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1079 (3d Cir.1976)). Since there is no contention that the Plaintiffs were ever incarcerated or convicted, summary judgment will be granted in favor of the Defendants as to the Plaintiffs' claims under the Eighth Amendment.

### E. Pendent State Law Claims

The Court has dismissed Plaintiffs' § 1983 claims which form the basis of jurisdiction in this case. As such, the remaining pendent state law claims alleged by the Plaintiffs will be dismissed for lack of subject matter jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (stating that "if the federal claims are dismissed before trial, ... the state law claims should be dismissed as well").

## IV. CONCLUSION

For the reasons stated, the Court will grant the Defendants' Motion For Summary Judgment (D.I.31) in its entirety.

An appropriate Order will be entered.