**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 27, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LELAND W. HACKETT,

      Plaintiff-Appellant,

v.

ARTESIA POLICE DEPARTMENT;
ARTESIA MAYOR PRO TEM
PHILLIP BURCH; ARTESIA
MUNICIPAL COURT JUDGE KAYE
KIPER; FIFTH JUDICIAL DISTRICT
COURT CLERK JOYCE HATFIELD;
ARTESIA POLICE DEPARTMENT
OFFICER RICARDO HUERTA;
ARTESIA POLICE DEPARTMENT
OFFICER PEDRO QUINONES;
ARTESIA POLICE DEPARTMENT
OFFICER CLARKE; PECOS
VALLEY DRUG TASK FORCE
AGENT CARROL CAUDILL; PECOS
VALLEY DRUG TASK FORCE
AGENT VICTOR J. RODRIGUEZ,

      Defendants-Appellees.

No. 09-2261
(D.C. No. 1:08-CV-00306-MCA-RHS)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **TACHA**, Circuit Judges.

Plaintiff Leland W. Hackett, proceeding pro se here as in the district court, appeals the district court's order granting summary judgment in favor of defendants the Artesia Police Department, Artesia Police Officers Ricardo Huerta, Pedro Quinones, and Robert Clarke, Artesia's Mayor Pro Tem Phillip Burch, and Pecos Valley Drug Task Force Agent Victor J. Rodriguez. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

I.

In his complaint, Mr. Hackett pled an alleged violation of his federal constitutional rights under 42 U.S.C. § 1983 and a conspiracy under 42 U.S.C. § 1985.[1] Three separate incidents in which Mr. Hackett was either detained or arrested form the basis of his suit. As a pro se litigant, Mr. Hackett's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Before addressing each incident and the claims attendant thereto, we

---

[1]     Mr. Hackett also alleged a violation of 42 U.S.C. § 14141, the violation of his state constitutional rights, and state law claims for assault and battery, false imprisonment, false arrest, and malicious prosecution. The district court either dismissed these claims or granted summary judgment for the defendants. Mr. Hackett does not appeal these rulings.

address Mr. Hackett's argument that summary judgment could not be granted because he demanded a jury trial. To the contrary, "[t]he Seventh Amendment is not violated by proper entry of summary judgment, because such a ruling means that no triable issue exists to be submitted to a jury." *Shannon v. Graves*, 257 F.3d 1164, 1167 (10th Cir. 2001).

## II.

The first incident took place in February 2006, when Officer Huerta observed Mr. Hackett driving without his seat belt. Mr. Hackett pulled into a convenience store parking lot and Officer Huerta pulled in behind him. According to Mr. Hackett, he and his passenger had already exited the truck and were on their way into the store when Officer Huerta ordered them to get back in the truck. As he approached the vehicle, Officer Huerta observed Mr. Hackett reach into the back seat and ordered him to step out of the truck. The belt tape recording of the encounter reveals that Officer Huerta told Mr. Hackett to "[t]urn around," R. at 226. While holding Mr. Hackett's thumbs together behind his back, he asked "[w]hat are you reaching in the back [of the truck] for?" *Id*. Mr. Hackett told him "just for my license." *Id*. "Well, don't be reaching in the back because I don't know what you got. . . . I don't know if you got any weapons or anything like that[.]" *Id*. Mr. Hackett volunteered that he did not have any weapons, but that he did have a pocket knife in his right pants pocket. He asked why he had been stopped and Officer Huerta told him that he was not

wearing his seat belt, which Mr. Hackett admitted. Officer Huerta conducted a pat-down search to locate the knife, but he could not find it, and asked if he could "pull everything out [of Mr. Hackett's pocket]." *Id*. at 227. Mr. Hackett told him, "[w]ell, I think so, yeah." *Id*. In addition to the knife, Officer Huerta pulled out a glass object, which Mr. Hackett himself said "[l]ook[ed] like a smoking utensil . . . because . . . all this stuff inside looks like it's been burned or something." *Id*. at 230.

At this point, Officer Huerta believed that the glass object was a methamphetamine pipe, and he requested a field test kit. According to his report, he "scrap[]ed out some of the crystal like substance from the tube . . . [and] placed the substance into the test kit. The substance tested positive for amphetamine due to the liquid changing orange." *Id*. at 213. In the meantime, Officer Huerta learned that Mr. Hackett did not have a valid driver's license. He issued him a citation for "the seat belt violation, unlawful use of license (suspended) and a non traffic citation for the possession of drug paraphernalia." *Id*. In subsequent proceedings, the glass pipe and field-test evidence were suppressed, and the municipal court judge deferred the charge of driving with a suspended license provided that Mr. Hackett paid $28.00 in court fees no later than June 21, 2006.

Mr. Hackett argues that the scope of his detention, i.e., the pat-down search, was unreasonable, and thus his Fourth Amendment rights were violated.

Specifically, he claims that Officer Huerta did not have any reason to be concerned for his safety, and the pat down was a pretext "to find . . . contraband," Aplt. Opening Br. at 25, and the district court erred in granting qualified immunity. We disagree.

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). We review summary judgment orders deciding qualified immunity somewhat differently: when the defendant seeks summary judgment on the basis of qualified immunity, "a plaintiff must clear two hurdles. The plaintiff must demonstrate on the facts alleged (1) that the defendant violated his constitutional or statutory rights, and (2) that the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009).

> We conduct a two-step inquiry when determining the constitutionality of a traffic stop. First we ask whether the officer's action was justified at its inception. If so, we then ask whether the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place.

*United States v. Valenzuela*, 494 F.3d 886, 888 (10th Cir. 2007).

The belt tape recording of the incident establishes that Office Huerta was concerned that Mr. Hackett might have been reaching for a weapon: "Well, don't be reaching in the back because I don't know what you got. . . . I don't know if

-5-

you got any weapons or anything like that[.]" R. at 226. In addition, Mr. Hackett volunteered that he had a pocket knife. In *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the Court held that a search for weapons during a routine traffic stop does not violate the Fourth Amendment where a "reasonably prudent man in the circumstances would be warranted in the belief that his safety . . . was in danger." *See also United States v. Garcia*, 459 F.3d 1059, 1063-64 (10th Cir. 2006) (holding that a pat-down search for weapons during the course of a *Terry* stop is proper when the officer has a reasonable suspicion that the person is armed). We agree with the district court's conclusion that there was not a Fourth Amendment violation and Officer Huerta was entitled to qualified immunity.

III.

The execution of a bench warrant is the second incident giving rise to Mr. Hackett's claims. As stated above, the municipal court judge deferred the charge of driving with a suspended license provided he timely paid the fine. When he failed to do so, the judge, on August 7, 2006, signed a bench warrant for his arrest. On August 15, Officer Huerta saw Mr. Hackett standing on the front porch of a home and called dispatch, which confirmed that there was an outstanding warrant for his arrest. Officer Huerta conducted a "[s]earch incident to arrest while looking for weapons and contraband." R. at 273. Mr. Hackett was then transported to a detention center, and after paying his outstanding fine, he was released. According to Mr. Hackett, he was "threatened by Officer Huerta

-6-

with fourth degree felony charges if [he] did not call [Pecos Valley Drug Task Force] Agent Caudill." *Id.* at 471. He claimed that following his release he tried to reach Agent Caudill, but was unsuccessful.

Mr. Hackett argues that "[t]he bench warrant arrest for failure to pay $28.00 in court costs was an extreme and unnecessary measure, whereas a summons or notice to show cause would have been more reasonable." Aplt. Opening Br. at 18. He also cites to some alleged procedural defects leading up to the issuance of the bench warrant. As a result, he asserts that the district court's conclusion that Officer Huerta was entitled to absolute immunity was wrong. We disagree. Because "[a]n official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order," *Valdez v. City & County of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989), the district court correctly determined that Officer Huerta was entitled to absolute immunity.

IV.

The third incident arises from a March 2007, traffic stop by Officer Quinones, who saw Mr. Hackett driving a vehicle with an expired license plate. When Mr. Hackett could not produce a valid driver's license, registration, or proof of insurance, Officer Quinones wrote him a citation and decided to have the vehicle towed. When Officer Clarke arrived on the scene, he was asked by Officer Quinones to "complete a tow sheet." R. at 285. While conducting the

inventory, Officer Clarke saw "a small, plastic bottle that appeared to be a bottle of Visine," *id.*, in an open compartment. On the basis of "training and experience," *id.*, Officer Clarke "kn[e]w that liquid methamphetamine can be carried in a Visine bottle," *id.*, and "decided to test the contents of the bottle using a NIC field test kit for methamphetamine," *id.* Officer Clarke reported the test was positive, and Officer Quinones arrested Mr. Hackett. But as Mr. Hackett points out, the test-kit instructions state: "WARNING These tests are NOT designed for use with liquid samples." *Id.* at 509. Mr. Hackett was arrested, and the case was turned over to Agent Rodriguez of the Pecos Valley Drug Task Force, who obtained a search warrant and had the Visine retested. This time the test was negative, and Mr. Hackett, who had been in custody for several hours, was released.

Mr. Hackett claims his constitutional rights were violated when the vehicle was impounded, and Officer Clarke seized the Visine bottle and tested its contents. He argues it was unnecessary to impound the vehicle because it was parked in a store parking lot, and thus neither impeded traffic nor affected the public safety. He also asserts that "Officer Quinones could have issued citations and allowed Mr. Hackett to call a friend to remove the [vehicle] on a car trailer," Aplt. Opening Br. at 33, an acknowledgment that neither he nor anyone else could lawfully drive the vehicle. These arguments lack merit. Under the community caretaking doctrine, concerns about theft or vandalism are

sufficient to justify impoundment. *See United States v. Kornegay*, 885 F.2d 713, 716 (10th Cir. 1989) (holding that "the fact that [a] vehicle [is] legally parked in a parking lot does not, in and of itself, require the finding that impoundment [is] unnecessary," particularly where "there [is] no one available to take custody of it . . . and there [is] the potential for theft or vandalism"); *see also United States v. Johnson*, 734 F.2d 503, 505 (10th Cir. 1984) (same).

Regarding the seizure of the Visine bottle and the subsequent field testing, Mr. Hackett claims that the Visine bottle was "a common, legal ordinary, non-criminal, and non[-]incriminating item," Aplt. Opening Br. at 21, and thus not subject to seizure. We disagree. The plain-view doctrine authorizes the seizure of evidence of a crime if

> (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object.

*United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004). While conducting an inventory search, Officer Clarke saw the bottle in an open compartment. More to the point, he "kn[e]w that liquid methamphetamine can be carried in a Visine bottle." R. at 285. As to the field testing, Mr. Hackett says it was done to "create[] probable cause [to arrest him] by fabrication of evidence with the claim that he performed a field test and that the results were positive for methamphetamine." Aplt. Opening Br. at 22. First, the testing did

not violate the Fourth Amendment because "[a] field test which reveals nothing more than whether a substance is cocaine does not constitute a search." *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998). Second, there is no evidence to support the claim of fabrication. Admittedly, the test kit said that it was not "designed for use with liquid samples," R. at 509. This admonition, however, does not prohibit such use. Moreover, the fact that the contents of the Visine bottle were retested after a search warrant was obtained, weighs against any suggestion of fabrication. "'The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (quoting *Hunter v Bryant*, 502 U.S. 224, 229 (1991)). We therefore affirm the district court's decision on qualified immunity.

V.

As his final argument, Mr. Hackett claims that the district court erred in granting summary judgment on his conspiracy claim. In his complaint, he pled a conspiracy claim under 42 U.S.C. § 1985, which the court dismissed because he is not a member of a protected class. Mr. Hackett appears to concede that he cannot proceed under § 1985, but urges us to consider his allegations as stating a claim for a civil conspiracy under New Mexico state law: "[T]he Court's dismissal is not warranted on the sole ground that Mr. Hackett may have

-10-

mistakenly labeled his conspiracy claim under § 1985, provided that he has pleaded facts that support a claim against the Defendants." Aplt. Opening Br. at 37. Setting aside the fact that it is not at all clear whether Mr. Hackett ever raised the issue of a state-law conspiracy in the district court, he has waived the issue in this court because he has not developed any argument or cited any legal authority to support the claim. In *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994), we held that pro se parties are required to "follow the same rules of procedure that govern other litigants." (quotation omitted). Rule 28(a)(9) of the Federal Rules of Appellate Procedure requires, among other things, "citations to the authorities . . . on which the appellant relies." When a pro se litigant fails to comply with Rule 28, "we cannot fill the void by crafting arguments and performing the necessary legal research." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005).

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge

-11-