**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

RACHELLE SHANNON,

      Plaintiff - Appellant,

vs.

BILL GRAVES, Governor of the State
of Kansas; RICHARD D. KOERNER,

      Defendants - Appellees.

No. 00-3029

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 98-CV-3395-KHV)

---

Steven G. Sklaver, Cooley Godward, L.L.P., Denver, Colorado, for Plaintiff -
Appellant.

Brian R. Johnson, Assistant Attorney General (and Carla J. Stovall, Attorney
General, on the brief), Topeka, Kansas, for Defendants - Appellees.

---

Before **KELLY**, **McKAY**, and **MURPHY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

      Plaintiff-Appellant Rachelle Shannon appeals from the summary judgment

in favor of state officials on her conditions-of-confinement claim, 42 U.S.C.

§ 1983. <u>Shannon v. Graves</u>, 2000 WL 206315 (D. Kan. Jan. 5, 2000). On appeal, she contends that the district court (1) conducted trial by affidavit, and (2) ignored the Seventh Amendment. She contends that discovery was needed and that the district court failed to recognize her showing of numerous constitutional violations. We appointed counsel who supplemented Ms. Shannon's brief, focusing on the claims involving exposure to raw sewage and inadequate laundering of blankets issued to inmates. We affirm.

Background

Ms. Shannon sued the Kansas Governor and the Warden of the Topeka Correctional Facility (TCF) claiming that her conditions of confinement violated the Fifth, Eighth and Fourteenth Amendments. She sought monetary, declaratory and injunctive relief, as well as costs and attorneys' fees. Although Ms. Shannon raised thirteen claims relating to her conditions of confinement, only the claims identified in the supplemental brief merit extended discussion given the substantive law that we discuss below.

The summary judgment evidence established that plumbing and sewer problems are frequent at TCF. Because of the site's topography, there is an inadequate gravity flow for the sewage system, thereby necessitating a lift station. All sewage flows into a lift station and a basket catches large items such

as washcloths and sanitary napkins.  Although there is a small grinding blade that operates on the sewage before it reaches the lift station, it is not sufficient to eliminate the need for the lift basket.  The prison does not have a "muffin monster" or large industrial grinding apparatus that would replace the lift basket.  When the waste reaches a certain level at the lift station, pumps are automatically activated and the sewage is pumped into city lines.

The lift basket must be cleaned at least daily, and that work is performed by inmates.  After the inmates have cleaned the basket, the resulting waste is placed in regular trash bags and disposed of with the facility's other trash.  R. Doc. 26, at 20.  Although the prison does not consider the sewage to be hazardous waste, it does provide inmates with protective gear.  The prison allows inmates coming into contact with the waste to shower after the basket has been cleaned; in the case of "excessive" contact, a shower will be permitted prior to the complete cleaning of the basket.  R. Doc. 14, at 12-13 (Martinez report).  In her verified complaint, Plaintiff maintains that she "was given a suit in which the sleeve did not reach the top of the glove.  During the basket cleaning she got some of the solid waste on her arm, but was not allowed to clean it off until she had finished and gone back inside."  R. Doc. 1, at 3, ¶ 20.

It is uncontroverted that the lift system has been the subject of staff and inmate complaints for many years given "mechanical problems that have caused

the system to back up and/or require the basket to be emptied by inmates several times a day." R. Doc. 14, at 13. Sewage backups occur from time to time, resulting in sewage coming up through various drains; Ms. Shannon's evidence tends to show backups in the kitchen, laundry, showers, halls and pods. R. Doc. 26, at 17; Doc. 1 (Form 9 dated 12/14/1996). Also, when one toilet is flushed, the sewage may backup into another cell's toilet. Apart from the flooding, there apparently is an odor problem. According to the Plaintiff, "[t]he carpeting in the OIC's [officer-in-charge's] office was removed recently because the odor from the pit floods could not be eliminated." R. Doc. 18, at 9.

When there is a sewage overflow, blankets are used to mop up the sewage. According to the complaint, the blankets are then "sent out, given no special cleaning, and issued to the inmates while they still smell." R. Doc. 1, at 3, ¶ 18. The complaint also alleges that when inmate clothes are returned from the laundry and rinsed, "brown water comes out, plus they stink." Id. at 4, ¶ 27. Defendants included an affidavit from the deputy warden for support services indicating that laundry items "are washed in commercial washing machines using clean water, detergent, and bleach and then dried in commercial air dryers." R. Doc. 23, Ex. C. The Martinez report indicates that laundry items used in a clean up would be processed in accordance with the Kansas Department of Corrections policy and program for the prevention and control of communicable,

environmental and infectious diseases, though specifics are not given.  R. Doc. 14 at 7, 15, Ex. 16a (policy).

Discussion

We review a district court's grant of summary judgment de novo.  Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A court considers all evidence and reasonable inferences therefrom in the light most favorable to the non-movant; however, the summary judgment material must contain probative evidence that would allow a trier of fact to find in favor of the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  The Seventh Amendment is not violated by proper entry of summary judgment, because such a ruling means that no triable issue exists to be submitted to a jury.  Fidelity & Deposit Co. v. United States, 187 U.S. 315, 319-20 (1902).

Prison officials are required to insure that inmates receive adequate food, clothing, shelter and medical care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency.  The objective component requires conditions sufficiently serious so as to "deprive inmates of the minimal

civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Alternatively, a condition must be sufficiently serious so as constitute a substantial risk of serious harm. Helling v. McKinney, 509 U.S. 25, 33-35 (1993). The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety. Wilson v. Seiter, 501 U.S. 294, 297, 303 (1991).

Inmate exposure to sewage can constitute a serious risk to inmate health and safety and satisfy the objective component. McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir. 2001); Ramos v. Lamm, 639 F.2d 559, 569-70 (10th Cir. 1980); Fruit v. Norris, 905 F.2d 1147, 1151 (8th Cir. 1990). Evidence in the record confirms what is obvious: exposure to the human waste of others carries a significant risk of contracting infectious diseases such as Hepatitis A, shigella, and others.[1] There is no requirement that an inmate suffer serious medical problems before the condition is actionable. Helling, 509 U.S. at 33 ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life threatening condition in their prison on the ground that nothing yet had happened

---

[1] In connection with another complaint, Ms. Shannon surmised that "Diarrhea frequently spreads here, possibly because of all the exposure to raw sewage (drains & pit) . . . ." R. Doc. 1 (Form 9 dated 12/27/96). This statement cannot be considered evidence of actual injury because it is purely speculative.

to them.").  At the same time, the frequency and duration of the condition, as well as the measures employed to alleviate the condition, must be considered when considering the objective component.  Hutto v. Finney, 437 U.S. 678, 686-87 (1978); McBride, 240 F.3d at 1291; Tokar v. Armontrout, 97 F.3d 1078, 1082 n.4 (8th Cir. 1996); see also Craig v. Eberly, 164 F.3d 490, 496 (10th Cir. 1998) ("[I]t is particularly important to develop an adequate record on factual disputes relating to the seriousness and length of the alleged deprivations, for these are essential elements of a conditions of confinement claim.").

With these standards in mind, we address Ms. Shannon's claims relating to exposure to sewage.  Though Ms. Shannon may be able to satisfy the objective component, she cannot demonstrate that prison officials acted with deliberate indifference (subjective component) insofar as her one-time exposure to sewage while she was cleaning the lift basket.  This is not a case where inmates were denied the necessary protective equipment.  See Rish v. Johnson, 131 F.3d 1092, 1097 (4th Cir. 1997).  Rather, it is uncontroverted that Ms. Shannon was provided with protective clothing and gear and was allowed to shower after the exposure.  She disputes the adequacy of the protective gear supplied to her and not being allowed to clean off the waste until the job was finished.  At best, these complaints suggest negligence–not a wanton and obdurate disregard for inmate health and safety.  See Good v. Olk-Long, 71 F.3d 314, 316 (8th Cir. 1995)

(granting qualified immunity where inmates not provided protective gear).

Ms. Shannon's claim concerning the alleged fecal contamination of blankets and clothing raises a material issue of fact as to the objective component of an Eighth Amendment claim. She claims that improper laundering results in blankets and clothing with an odor, and clothing in need of rinsing. One might question the necessity of using blankets that will be issued to inmates to mop up sewage, particularly when it is obvious that inmates will need to use those blankets for warmth. Despite the undisputed evidence that the sewage-soaked blankets are washed in a commercial washer, using clean water, detergent and bleach, the jury could conclude that those efforts are insufficient to remove the fecal contamination based upon the following evidence: (1) blankets are not simply splashed with sewage but are, instead, used to soak up sewage when toilets and drains back up; (2) blankets and clothing continue to smell of sewage after being laundered; and (3) inmates feel compelled to re-rinse their clothing after it returns from the laundry and, when they do so, the resulting rinse water is brown. Viewing the evidence in the light most favorable to Ms. Shannon, her claim is that the items are still contaminated with sewage after laundering with a consequent risk to human health.

Turning to the subjective component of an Eighth Amendment claim concerning the blankets and clothing, nothing in the record indicates that prison

officials were aware of this condition prior to Ms. Shannon's filing of her complaint; Ms. Shannon did not adequately controvert that section of the Martinez report indicating that she has never complained that the laundry process results in items being contaminated with sewage, or filed a grievance about it. Doc. 14, at 11. She did respond that she had turned in a grievance a month before filing the complaint about having to store dirty laundry in cells prior to laundering, that blues and whites were not clean, and that many items are not returned. Doc. 18 at 6. Although prison officials will not be able to rely upon their ignorance of the problem in the future, Ms. Shannon has not made a showing of deliberate indifference in this case.

The sewage backups at the facility are equally troubling. Evidence in the record suggests that prison officials are aware that the existing sewage system is inadequate. Yet cases must be decided on the record, and what is before us does not establish that these incidents are of such frequency and duration so as to create a genuine issue of material fact concerning the objective component of an Eighth Amendment violation. Although it is clear that there is a problem, its scope is not defined in other than general terms without adequate reference to frequency and duration. Cf. Hall v. Bellmon, 935 F.2d 1106, 1110-11 (10th Cir. 1991) ("a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury"). Also, the summary judgment evidence tends to

show that problems are corrected by the maintenance staff, often within the next day or two.  R. Doc. 14, at Ex. 16.  Although Ms. Shannon contends that "it is most common that inmates have to complain to more than one officer, often for weeks, before a work order is turned in for maintenance work," R. Doc. 18 at 9, she provides no specifics.  While we believe that the <u>Martinez</u> report seriously underestimates the potential hazard of exposure to raw sewage and the need for a system-wide solution, what has been presented by Ms. Shannon concerning the sewage backups is insufficient to withstand summary judgment on the objective component of an Eighth Amendment claim.

AFFIRMED.

**No. 00-3029, SHANNON v. GRAVES, et al.**

**McKAY, Circuit Judge, concurring in part and dissenting in part:.**

Ms. Shannon's complaint alerts us to serious problems at the Topeka Correctional Facility. Systemic sewage backups cause flooding in private cells; the routine practice is to mop sewage with inmates' blankets; soiled blankets are then washed for reissue without special laundering treatment. Each of those material facts are admitted or not denied. Further, Ms. Shannon alleges that standing sewage has been ignored for as long as weeks and that reissued blankets often weep brown liquid. Those assertions find no answer in Defendants' response that the maintenance staff often corrects problems within a day or two and that laundering procedures are according to policy. I join the majority's concluding remark that the "Martinez report seriously underestimates the potential hazard of exposure to raw sewage," but the deficiencies do not end there. Given the material facts admitted and not denied, Defendants' "deliberate indifference" is genuinely at issue. Therefore, I must dissent.

The Constitution requires adequate conditions of confinement, and facility officials may not be deliberately indifferent to inadequacies. I concur with the majority's legal framework but depart from the conclusion that there are no genuine issues of material fact. First, regarding the inadequate laundering claim, the majority holds that the complaint satisfies the objective component of the two-part test but fails the subjective component because evidence does not expressly

confirm that facility officials were aware of inadequacies prior to Ms. Shannon's complaint. However, the record specifies that the obvious health risks attach to Defendants' own conduct, not in some unknown circumstance to which officials might be ignorant prior to the filing of a complaint. See Farmer v. Brennan, 511 U.S. 825, 835-47 (1994) (explaining that deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other"). Because the health risks are obvious, the majority misplaces the burden of proof. When there exists "an obvious risk to inmate health," the burden is on the "officials to prove that they were unaware." Id. at 844. Defendants have failed to carry that burden.

Defendants knowingly soak up sewage with inmates' blankets and supervise the laundering that precedes reissue. It is the inadequacy of these routines that is genuinely at issue. The majority questions why inmates' blankets must be used at all, and the absence of an answer leaves me persuaded that officials are deliberately indifferent–at the very least, these facts raise a prima facie case that cannot be disposed of on summary judgment. This case cries out for discovery and trial. Defendants do not deny that they replaced their own carpet because it was futile to clean the damage done by sewage overflow, but they continue to issue the sewage-soaked blankets to inmates. Defendants' meager defense–that all articles are washed according to guidelines–manifests

-2-

indifference to the fact that the unusual soiling of these blankets may well exceed the degree of filth contemplated by usual washing guidelines. All told, the evidence admitted and not denied easily establishes "genuine issues" about official indifference to laundering practices, which is a material fact in this case.

Second, regarding the exposure to raw sewage claim, relying on lack of "frequency and duration" evidence, the majority holds that Ms. Shannon failed to satisfy the objective portion of the two-part test. Interpreting the evidence in a light most favorable to Ms. Shannon, as we are required to do, she has been exposed to raw sewage for as long as weeks at a time and, in my view, that is clearly an objective problem, even if the maintenance crew often cleans up within a day or two. In addition, Defendants concede that the root of the entire problem is an inadequate grinder, which they imply could be remedied by installing a heavy-duty grinder. With that known alternative available, cost may not be an adequate defense to this continuing, serious medical threat. Defendants have failed to refute the fact that, given past experience and the continuing nature of the problem, Ms. Shannon has a reasonable expectation of future exposure to a serious health hazard.

Given the genuine issues of material fact, I would reverse and remand.