**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

EARL F. CARTER; JAMES G.
SPRING; EUGENE C. SIEGRIST;
MAIDA MCPEAK; MICHAEL
E. CARTER; THOMAS R.
SIEGRIST; CHRISTIAN SCHANK;
CANDACE SCHANK; CLYDE
JUPITER; PAT JUPITER; JUPITER
CORPORATION, a Maryland
corporation; BRUCE D. SCHUPP;
BEULAH SCHUPP; DEANNA
MATTHEWS; JEFFREY
MATTHEWS; KEVIN ORTON;
MICHELLE ORTON; MARK
BROBERG; TIM CANNON;
PATTI CANNON; DAVID
CHYTKA; DAVID NIELSEN;
LYNN NIELSEN; BETH
O'SULLIVAN; CHRIS SLADE,

        Plaintiffs-Appellees,

v.

CYBERTECH INTERNATIONAL,
a Utah corporation; LASERVEND;
DAVID J. GRIFFITHS; CINDY
GLEAVES; ROGER DORMAN;
MARK H. ROBERTS; BRENT K.
HEAPS; DELYNN HEAPS;
DAREN V. GATES,

        Defendants,
    and

DOUGLAS G. GREGG,

        Defendant-Appellant.

No. 00-4078
(D.C. No. 97-CV-542)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **EBEL**, **KELLY**, and **LUCERO**, Circuit Judges.

Defendant Douglas G. Gregg appeals pro se from the district court's order granting summary judgment on plaintiffs' complaint brought pursuant to state and federal securities laws. We affirm.

Although Gregg disputes a number of the factual allegations made in plaintiffs' complaint and supported by the affidavits and other materials that they submitted with their motion for summary judgment, he failed to submit any contravening affidavits or materials of his own in response to the motion. See Fed. R. Civ. P. 56(c), (e). The facts supported by the record are essentially undisputed for purposes of our review.

This case arises out of the sale of unregistered securities by officers and employees of two Utah corporations, Laservend and Cybertech International, Inc.

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(Cybertech). Cybertech was the holding company for Laservend. Laservend was organized for the purpose of developing a software vending machine. Defendants, officers and employees of Laservend, marketed approximately four million dollars worth of Laservend stock through the use of interstate commerce. Plaintiffs are investors who purchased shares of Laservend at fifty cents per share during the months of January through April 1997. Defendants promised investors that Laservend would soon go public and the value of their investment would at least double. Investors were also told that once Laservend went public, the value of their investment would increase to at least ten dollars to twenty dollars per share, and that the national investment firm of Goldman, Sachs would be underwriting the initial public offering. In reality, however, no registration statements had been filed, none of the paperwork necessary to a public offering was ever completed, Goldman, Sachs was not involved with the alleged public offering, and the investors never received any shares of Laservend.

Gregg was the vice president of, and a director of, Laservend beginning January 21, 1997. It appears that he was also the vice president and a director of Cybertech until his resignation on May 23, 1997. [1] In his role as vice president,

---

[1] On May 23, 1997, a law firm hired by Laservend to attempt to cure the securities violations associated with its past activities wrote a letter warning its board of directors that the issuance of unregistered shares could not have been accomplished "without violation of a large number of federal and state securities

Gregg took an active role in the affairs of Laservend, including its sale of stock. He hired Laservend's director of investor relations, Roger Dorman, who was responsible for marketing Laservend's shares. Dorman testified that Gregg was personally responsible for allocating ten percent of the price of each share sold between the salesman and Laservend's finance department.

Gregg told Dorman that Goldman, Sachs was going to underwrite the offering of Laservend's shares. Dorman frequently expressed to Gregg his concerns that Laservend was selling shares to outside third parties when it was not authorized to publicly trade stocks. Mary Gleaves, another employee of Laservend, testified that Gregg gave her information about the shareholders and the number of shares they had purchased to enter into Laservend's computer records.

The plaintiffs' third amended complaint alleges causes of action against Gregg and the other defendants for violation of the Securities Act of 1933, the Utah Uniform Securities Act (Utah Code Ann. § 61-1-22), the Securities and Exchange Act of 1934, and various state law claims including fraudulent and/or

[1](...continued)
laws." (R. Doc. 79 Ex. E at 1.) The letter also warned that if Laservend had violated federal or state securities laws, "the Company would generally be liable to return all the funds invested, plus interest and applicable attorneys' fees and, in certain circumstances, additional penalties." ( Id. at 3.) It further cautioned the directors that directors and officers could be held personally liable for these amounts.

negligent misrepresentation, breach of contract, and money had and received. All of the corporate defendants, and many of the individuals named in this action, have filed for bankruptcy protection.

On November 29, 1999, plaintiffs filed a motion for summary judgment. Only Gregg responded. His three-page response consisted purely of argument, without citations to any authorities and without any materials or affidavits attached. The district court determined that it could resolve the motion for summary judgment without a hearing. In a brief order, it granted summary judgment to the plaintiffs against the remaining defendants, including Gregg. [2] It then entered judgment, jointly and severally, against defendants Gregg, Cindy Gleaves and Brent Heaps, in the amount of $1,282,335.01.

We first address our jurisdiction. Gregg filed a premature notice of intent to appeal on May 3, 2000. The district court did not enter its order granting plaintiffs' motion for summary judgment until June 7, 2000. The thirty-day deadline for the filing of a timely notice of appeal from this order expired on July 7, 2000. Although Gregg did not file a formal notice of appeal prior to this deadline, he did file in this court on June 9, 2000 his jurisdictional memorandum

---

[2] It does not appear from the record on appeal that the defendants who filed bankruptcy were ever formally dismissed from this action. The order of summary judgment, however, recites that the case is "closed." We construe this as a dismissal of any remaining parties.

brief entitled "appeal to overturn summary judgment" in response to this court's jurisdictional show cause order. We construe this document as supplying the timely notice of appeal required by Fed. R. App. P. 3, see Smith v. Barry , 502 U.S. 244, 248–49 (1992), and therefore proceed to the merits of this appeal.

"We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Hollins v. Delta Airlines , 238 F.3d 1255, 1257 (10th Cir. 2001). Summary judgment is proper if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Scull v. New Mexico , 236 F.3d 588, 595 (10th Cir. 2000) (quotation omitted).

Gregg brings a number of procedural and substantive attacks on the order granting summary judgment. He claims that the order denied him his right to have plaintiffs' claims against him tried by a jury. He argues he was denied a hearing on the summary judgment motion, after a hearing had been specifically promised him at a status conference held in this case. Finally, he argues that because of his lack of scienter and personal involvement, summary judgment should not have been entered against him personally.

The Seventh Amendment governs a litigant's right to a jury trial. "The Seventh Amendment is not violated by proper entry of summary judgment, because such a ruling means that no triable issue exists to be submitted to a jury." Shannon v. Graves, 257 F.3d 1164, 1167 (10th Cir. 2001). As will be seen, Gregg fails to show that the entry of summary judgment was improper in this case; therefore, he was not deprived of a right to a jury trial.

Nor was Gregg entitled to a formal, evidentiary hearing on plaintiffs' motion for summary judgment. Although parties have the right to be heard on a summary judgment motion, "[a] formal evidentiary hearing with oral argument . . . is not necessarily required." Geear v. Boulder Cmty. Hosp., 844 F.2d 764, 766 (10th Cir. 1988). "Rather, the parties' right to be heard may be fulfilled by the court's review of the briefs and supporting affidavits and materials submitted to the court." Id. Gregg was afforded the opportunity to submit responsive materials in this case prior to the district court's entry of summary judgment. The order of summary judgment indicates that the district court considered his submission. Gregg's right to be heard was adequately served by the process he received in this case. Gregg also fails to show that the district court's decision, after reviewing the pleadings, to depart from its previously expressed statements about holding a hearing denied him due process.

We turn to Gregg's arguments on the merits. As previously noted, plaintiffs submitted evidence that Gregg was the vice president and director of Laservend during the events in question and that he participated in its operations and the issuance of stock. Gregg now argues that the public records submitted showing his position as vice president and director of Laservend were created without his consent and knowledge. There were no affidavits or other materials submitted to dispute the accuracy of the public records. See Fed. R. Civ. P. 56(e). Moreover, there was sufficient, other testimonial evidence to support the data provided by the public records concerning his participation in the activities of Laservend. We therefore reject this argument.

Gregg also takes issue with a number of facts contained in plaintiffs' motion for summary judgment. ( See Appellant's Br. at 11–14.) Having failed to contest these facts in the district court in response to the motion for summary judgment, we will not consider this.

The argument that plaintiffs failed to make a sufficient showing that he participated personally in or had knowledge of the violation of securities laws was not raised before the district court.  We will not consider the alleged deficiencies for the first time on appeal.

**AFFIRMED.**


Entered for the Court


Carlos F. Lucero
Circuit Judge