**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

AUDREY LEE TENNYSON,

      Plaintiff - Appellant,

v.

MATTHEW CARPENTER, Chief of
Unit Managers; ROBERT SPARKS, Unit
Manager; "THE SUPERIORS," Identities
Not Yet Known; VANCE EVERETT,
K.C.C.C. Warden; KIT CARSON
CORRECTIONAL CENTER, Private
Prison; ROGER WERHOLTZ, C.D.O.C.
Executive Director,

      Defendants - Appellees.

No. 13-1338
(D.C. No. 1:13-CV-00648-LTB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **MATHESON**, Circuit Judges.

Audrey Lee Tennyson, a Colorado state prisoner, filed a pro se civil rights

action asserting claims under 42 U.S.C. §§ 1983, 1985, and 1986; the Religious Land

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5; and state law. He alleged constitutional violations under the First, Eighth, and Fourteenth Amendments. The district court sua sponte dismissed his amended complaint as legally frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). We have jurisdiction under 28 U.S.C. § 1291. Because we hold that some of Mr. Tennyson's claims are not legally frivolous, we affirm in part and reverse in part the district court's judgment and remand for further proceedings.

## I. BACKGROUND

### A. *Facts Alleged in the Amended Complaint*

During a facility shakedown at the Kit Carson Correctional Center ("KCCC") in November 2011, defendant Robert Sparks searched Mr. Tennyson's cell and removed several items, including two three-ring binders. Mr. Tennyson was a member of the prison choir called the "Praise Team." The prison chaplain had given him the binders to store his choir music and had authorized Mr. Tennyson in writing to keep them in his cell. A subsequent policy change prohibited choir members from keeping the binders in their cells, so they were confiscated in the shakedown.

In his amended complaint, Mr. Tennyson did not challenge the confiscation of his choir binders. His suit instead concerned his personal property and the alleged retaliation he suffered when he used the prison grievance process to try to retrieve that property.

Mr. Tennyson had displayed family photos under the binders' clear plastic covers. During the shakedown, Officer Sparks removed most of Mr. Tennyson's personal photos from the binders and left them in the cell. But Mr. Tennyson noticed a picture of his daughter in her graduation gown was not among the photos Officer Sparks left behind. Officer Sparks refused Mr. Tennyson's request to double check the confiscated binders for the missing photo.

Mr. Tennyson filed a step-one grievance, seeking return of the graduation photo. Officer Sparks responded that he had carefully removed all of Mr. Tennyson's personal photos before confiscating the binders. Mr. Tennyson then filed a step-two grievance, which defendant Matthew Carpenter denied, stating that Mr. Tennyson had provided no evidence that his missing photo was located in one of the binders. Officer Carpenter also asserted that, if Mr. Tennyson was missing a photo, it was due to his own misconduct in using the chaplain-issued binders for a non-choir purpose. He claimed the chaplain had repeatedly asked Mr. Tennyson to return the binders and had not given anyone permission to use them for other purposes.

Although his choir binders had been confiscated two months earlier in the shakedown, Mr. Tennyson alleged that step-two decision was the first time Officer Carpenter had accused him of any misconduct related to them. Contrary to Officer Carpenter's allegation, Mr. Tennyson claimed that no restrictions had been placed on the choir members' personalizing their music binders. He alleged that he and other

- 3 -

Praise Team members had been displaying their personal photos in their binders for a year or more, with no accusation of misconduct. And he asserted that the choir members would have stopped that practice had they been told to do so.

Five days after Officer Carpenter denied his step-two grievance, Mr. Tennyson was suspended from the Praise Team. The chaplain told Mr. Tennyson that "Superiors" had informed him that Mr. Tennyson had been found guilty of misusing his choir binders as photo albums, and they had recommended that the chaplain impose the maximum penalty for a choir member's misconduct. The chaplain said that Mr. Tennyson's misconduct had come to his attention because of the step-two grievance that Mr. Tennyson had filed. When Mr. Tennyson tried to explain, the chaplain said he had been directed to discipline Mr. Tennyson and that his hands were tied. Mr. Tennyson alleged he was the only choir member penalized for conduct all choir members had engaged in. He also was the only African American on the Praise Team.

Mr. Tennyson claimed his use of the prison's grievance process caused him to be disciplined. He alleged that Officer Carpenter and the Superiors found him guilty based upon Officer Carpenter's allegation of misconduct, which was combined with his denial of Mr. Tennyson's step-two grievance. Then he was disciplined without notice or a meaningful opportunity to be heard.

Mr. Tennyson further alleged that, fearing more penalties, he almost abandoned his right to file a step-three grievance. But he chose to take that risk to

- 4 -

retrieve his treasured photo. In his step-three grievance, Mr. Tennyson disputed Officer Carpenter's claim that he had misused his choir binders. He also noted that he had been removed from the Praise Team after initiating the grievance process.

Three months after the shakedown, and while his step-three grievance was pending, two photos belonging to Mr. Tennyson—his daughter's graduation photo and one other—were slid under his cell door in a makeshift envelope, with no indication of who delivered them or where they came from. Mr. Tennyson's step-three grievance was subsequently denied.

Mr. Tennyson then initiated a new grievance. This time he claimed retaliation based on exercise of his First Amendment right to use the grievance process. He also alleged a violation of his First Amendment right to participate in the Praise Team. This new grievance was denied as well.

## B. *Procedural History*

Mr. Tennyson filed this pro se action in March 2013 and amended his complaint once per the district court's order. He named as defendants KCCC, Officer Sparks, and Officer Carpenter, as well Vance Everett, the Warden of KCCC, and Roger Werholtz, a former interim Executive Director of the Colorado Department of Corrections ("CDOC"). He also brought claims against unknown individuals, identifying them only as "the Superiors" who, with Officer Carpenter, were responsible for disciplining Mr. Tennyson. He sought damages and declaratory and injunctive relief. For purposes of his § 1983 claims, Mr. Tennyson alleged that

KCCC is a private detention facility clothed with the authority of CDOC, and that the individual defendants were acting under the color of state law.[1]

After granting Mr. Tennyson leave to proceed in forma pauperis under 28 U.S.C. § 1915, the court sua sponte dismissed his amended complaint as legally frivolous under § 1915(e)(2)(B)(i) and entered judgment against him. The court subsequently denied his motion to amend the judgment. Mr. Tennyson filed a timely notice of appeal.

## II. **STANDARDS OF REVIEW**

"We generally review a district court's dismissal of a complaint for frivolousness under § 1915(e) for an abuse of discretion." *Milligan v. Archuleta*, 659 F.3d 1294, 1296 (10th Cir. 2011). We review de novo a frivolousness determination that turns on an issue of law. *Id.* "Dismissal for frivolousness is only appropriate for a claim based on an indisputably meritless legal theory." *Id.* (internal quotation marks omitted). Claims should not be dismissed with prejudice unless "amendment would necessarily be futile." *Id.* "In determining whether dismissal is proper, we accept the allegations in the complaint as true and construe those allegations and any reasonable inferences therefrom in the light most favorable to [Mr. Tennyson]." *French v. Adams Cnty. Detention Ctr.*, 379 F.3d 1158, 1159

---

[1] *See Smith v. Cochran*, 339 F.3d 1205, 1213-15 (10th Cir. 2003) (affirming denial of qualified immunity on Eighth Amendment claim where "important penological responsibilities" had been delegated by the state to the defendant, a private individual).

(10th Cir. 2004). Because Mr. Tennyson is proceeding pro se, we liberally construe both his amended complaint and his arguments on appeal. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (recognizing pro se litigant's pleadings are "held to a less stringent standard"); *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998) (liberally construing pro se appellate brief).

## III. DISCUSSION

### A. Non-Frivolous Claims

The district court erred in concluding that some of Mr. Tennyson's claims are legally frivolous. His claims under RLUIPA and the First Amendment, his claim of retaliation for constitutionally protected activity, and his equal protection claim do not present indisputably meritless legal theories. Mr. Tennyson brought these claims against Officer Carpenter and the Superiors. We reverse the court's dismissal of these claims and remand for further proceedings.

### 1. First Amendment and RLUIPA

Mr. Tennyson alleged in his amended complaint that he is a devout Christian and that he had been an active and upstanding member of the Praise Team for over three years before he was suspended from the choir. He alleged that singing and worshiping as a member of the choir is "his response to the dictates of God" and that part of his ministry was to help lead the congregation "into experiencing God's presence through song and worship." R. at 82-83. Mr. Tennyson claimed that Officer Carpenter and the Superiors violated his First Amendment rights and

- 7 -

RLUIPA by causing him to be suspended from the Praise Team based on a pretextual allegation of misconduct.  He asserted that his removal from the choir constituted an unreasonable curtailment of and substantially burdened his ability to freely exercise his religion.

"It is well-settled that inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (internal quotation marks, brackets, and ellipsis omitted).  But prison officials' legitimate penological interests may nonetheless justify a limitation on religious exercise.  *See id.*  Under RLUIPA:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> > (1) is in furtherance of a compelling governmental interest; and
>
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).  To assert a free-exercise claim under the First Amendment or a violation of RLUIPA, a prisoner must allege a substantial burden on his or her sincerely held religious beliefs.  *See Kay*, 500 F.3d at 1218 (addressing sufficiency of allegations under Free Exercise Clause); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010) (holding RLUIPA claim requires prisoner to show "he wishes to engage in (1) a religious exercise (2) motivated by a sincerely

held belief, which exercise (3) is subject to a substantial burden imposed by the government").

Further, "the exercise of religion often involves not only belief and profession but the performance of (or abstention from) physical acts: assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation." *Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014) (internal quotation marks omitted). Under RLUIPA, a court must protect "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). We apply the same rule to First Amendment claims. *See Kay*, 500 F.3d at 1220 (rejecting rule that prisoner must show religious exercise was "'necessary' to the practice of his religion").

The district court dismissed Mr. Tennyson's First Amendment and RLUIPA claims, stating that he "does not allege facts demonstrating that he is being denied the right to practice his sincerely held religious beliefs. He only alleges facts demonstrating that he is being denied choir eligibility. This denial does not deny him the ability to practice his religion." R. at 143. The court erred by construing too narrowly the exercise of religion, as our recent decision in *Yellowbear* demonstrates.

"When a sincere religious claimant draws a line ruling in or out a particular religious exercise, it is not for us to say that the line he drew was an unreasonable one." *Yellowbear*, 741 F.3d at 55 (internal quotation marks omitted); *see also Kay*,

500 F.3d at 1220 ("Sincerely held is different from central, and courts have rightly shied away from attempting to gauge how central a sincerely held belief is to the believer's religion." (internal quotation marks omitted)). Mr. Tennyson pled a substantial burden on his religious exercise based on his suspension from the choir, which he alleged was a religious activity motivated by his sincerely held religious beliefs. Thus, the district court erred in deciding it was frivolous for Mr. Tennyson to allege that when defendants suspended him from the Praise Team, they denied him the right to exercise his sincerely held religious beliefs under the First Amendment and RLUIPA.

2. **Retaliation for Constitutionally Protected Activity**

Mr. Tennyson alleged that Officer Carpenter and the Superiors retaliated against him for exercising his First Amendment right to file a grievance by causing him to be suspended from the Praise Team under the pretext that he had committed misconduct related to his choir music binders. He claimed that, had he not filed his grievances seeking the return of his missing photograph, he would not have been suspended from the Praise Team. According to his chronology of events, he first filed a grievance attempting to retrieve the family photograph that went missing when Officer Sparks confiscated his choir music binders. In denying his step-two grievance, Officer Carpenter accused him of misuse of the binders, a claim Mr. Tennyson alleged was unfounded. Days later, the chaplain suspended Mr. Tennyson from the Praise Team at the direction of Officer Carpenter and the

Superiors.  Other choir members who had engaged in the same conduct were not disciplined.

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (internal quotation marks and brackets omitted).  Filing a prison grievance qualifies as "constitutionally protected activity" under the First Amendment.  *Id.*  The district court stated that Mr. Tennyson "fails to allege specific facts tending to show that the alleged acts of retaliation were substantially motivated by his protected activity."  R. at 142.  We disagree.

Mr. Tennyson alleged retaliation for his constitutionally protected activity— the filing of grievances.  The retaliation was suspension of his ability to exercise his sincerely held religious beliefs, which "would chill a person of ordinary firmness from continuing to engage in [the constitutionally protected] activity."  *Gee*, 627 F.3d at 1189 (internal quotation marks omitted).  Mr. Tennyson alleged that his suspension from choir eligibility was "substantially motivated as a response to his exercise of constitutionally protected conduct."  *Id.* (internal quotation marks and brackets omitted); *see also Milligan*, 659 F.3d at 1296 (reversing § 1915(e) dismissal where prisoner alleged he lost his prison job because he had filed a grievance).  Based on our decision in *Gee* and Mr. Tennyson's allegations, we conclude the district court erred in dismissing Mr. Tennyson's retaliation claim as legally frivolous.

3. **Equal Protection**

Mr. Tennyson attempted to bring an equal protection claim under the Fourteenth Amendment against Officer Carpenter and the Superiors. He claimed that, although all of the choir members had used their music binders in the same way, he was the only Praise Team member disciplined for misuse of his binders.

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (internal quotation marks and emphasis omitted). "[T]o assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011) (internal quotation marks omitted). "[D]ifferent types of equal protection claims call for different forms of review." *Id.* at 1172. "Strict judicial scrutiny is appropriate only when the classification involves a suspect class or interferes with a fundamental right." *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996). When strict scrutiny applies, defendants bear the burden of showing their actions were "narrowly tailored to achieve a compelling government interest." *KT & G Corp. v. Att'y Gen.*, 535 F.3d 1114, 1137 (10th Cir. 2008). In contrast, under rational basis review, a prisoner must "overcome a presumption of government rationality" by pleading facts indicating that "the distinction between himself and other inmates was not reasonably related to some

- 12 -

legitimate penological purpose." *Trujillo*, 465 F.3d at 1228 (internal quotation marks omitted).

The district court initially held "Mr. Tennyson's allegations do not implicate either a fundamental right or a protected class." R. at 146. Then, applying a rational basis test, it concluded he failed to allege he was treated differently from similarly situated inmates because "[i]t is not plausible that there are no relevant differences between Mr. Tennyson and other inmates that might reasonably account for their different treatment." *Id.* at 147 (internal quotation marks and brackets omitted). The district court relied on *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994), in which we affirmed dismissal of a prisoner's equal protection claim alleging he was treated differently from other inmates with similar records when he was transferred to administrative segregation.

The district court erred in holding that Mr. Tennyson failed to plead facts supporting strict scrutiny review. He alleged that he was singled out for discipline because he had exercised his First Amendment right to use the prison's grievance process, a fundamental right, *see Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). He further alleged he was the only African American in the choir and the only member disciplined for conduct common to all choir members, thereby alleging a suspect classification based on race.[2] *Templeman* is distinguishable because the

---

[2] Mr. Tennyson alleged, "Whether the decision was based on [him] . . . using the grievance procedure, or because he was the only African-American on the Team,

(continued)

inmate in that case did not allege different treatment interfering with a fundamental right or based on a suspect classification. *See id.* Given Mr. Tennyson's allegations, it was not necessary for him to allege further that his different treatment was not reasonably related to a legitimate penological purpose.[3] The district court erred in dismissing Mr. Tennyson's equal protection claim as legally frivolous.

\* \* \* \*

Up to this point, we have determined that Mr. Tennyson's First Amendment, RLUIPA, retaliation, and equal protection claims are non-frivolous.[4]

---

the fact that he was the only member from the Team to be disciplined for a conduct common to them all, constitutes discrimination in violation of the Equal Protection Clause . . . ." R. at 92.

[3] Even if Mr. Tennyson had not alleged a suspect class or interference with a fundamental right, dismissal of his equal protection claim with prejudice was not appropriate because amendment of his complaint would not necessarily be futile. He may be able to plead facts sufficient to show that his classification "lacked a reasonable basis or a reasonable relation to a legitimate penological interest." *Milligan*, 659 F.3d at 1296.

[4] The district court therefore erred by dismissing all of Mr. Tennyson's claims against Officer Carpenter on the ground that they related solely to Officer Carpenter's denial of Mr. Tennyson's grievances. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (holding that "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983"). But as our previous discussion shows, Mr. Tennyson's allegations involving Officer Carpenter cannot be so narrowly construed.

The district court also erred in dismissing all of Mr. Tennyson's claims against the unidentified Superiors on the ground he did not provide sufficient information to allow for service of process on each defendant. Mr. Tennyson argues he did not know these defendants' identities at the time he filed his amended complaint. He says that, with discovery, he will be able to determine the names of the individuals

(continued)

- 14 -

B. *Legally Frivolous Claims*

The district court dismissed as legally frivolous Mr. Tennyson's claims of cruel and unusual punishment in violation of the Eighth Amendment and his claim that he was deprived of his property without due process in violation of the Fourteenth Amendment. We affirm the district court's dismissal of these claims.[5]

1. **Cruel and Unusual Punishment**

Mr. Tennyson attempted to allege several Eighth Amendment violations. He first claimed that Officer Carpenter and the Superiors suspended him from religious activities "for no legitimate reason and without any process demonstrat[ing] malice, ill will, a desire to injure, or reckless indifference to [his] rights." R. at 91. He asserted that "[s]uch a wanton and malicious action constitutes a per se disproportionate punishment" and violates his "rights to be free from Cruel and Unusual Punishment." *Id.* Mr. Tennyson also claimed that Officer Sparks

---

who allegedly violated his constitutional rights. The district court erred in dismissing these claims as frivolous without first affording Mr. Tennyson a reasonable opportunity to take discovery and amend his complaint to name the particular individuals. *See Martinez v. Winner*, 771 F.2d 424, 442 (10th Cir. 1985), vacated on other grounds by *Tyus v. Martinez*, 475 U.S. 1138 (1986).

[5] We also affirm the district court's dismissal as legally frivolous Mr. Tennyson's claims under 42 U.S.C. §§ 1985 and 1986, his claim that Officer Sparks violated the Fourth Amendment's prohibition against unreasonable seizures, and his claims against KCCC. In his appeal brief, Mr. Tennyson does not point to any error in the court's dismissal of these claims. He has therefore forfeited appellate review of these issues. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.").

intentionally and maliciously removed family photos from his cell, violating his Eighth Amendment rights. And he claimed that, by failing to discipline Officer Sparks, Warden Everett also subjected him to cruel and unusual punishment. We agree with the district court that Mr. Tennyson's Eighth Amendment claims are indisputably and legally meritless.

"Prison officials are required to insure that inmates receive adequate food, clothing, shelter and medical care." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). To state an Eighth Amendment claim, an inmate must allege prison conditions that are, objectively, "sufficiently serious so as to deprive inmates of the minimal civilized measure of life's necessities" or conditions that "constitute a substantial risk of serious harm." *Id.* (internal quotation marks omitted). In *Shannon*, for example, we held that a prisoner's allegations of exposure to fecal-contaminated blankets and clothing raised a material issue of fact regarding the objective component of an Eighth Amendment claim. *See id.* at 1169. The inmate must also allege "that a defendant prison official [has] a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.* at 1168.

Mr. Tennyson's alleged deprivations fall far short of what our cases require for an Eighth Amendment claim. In *Gee* we dismissed a prisoner's Eighth Amendment claim based on the confiscation of his canteen items, a deprivation of hygiene items for approximately 25 hours, and his incarceration in an isolation cell for four weeks

as failing to state a plausible claim of a constitutional violation. 627 F.3d at 1192; *see also Trujillo*, 465 F.3d at 1225 n.17 (10th Cir. 2006) (holding prisoner's allegations of limited access to employment, education, housing assignment, religious programming, recreation time and equipment, telephone and commissary "[did] not demonstrate a deprivation of the minimal measure of life's necessities as required to state [an Eighth Amendment] claim" (internal quotation marks omitted)); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (holding Eighth Amendment claim based on denial of right to eat a Kosher meal in a particular location was legally frivolous).

Infringement of a prisoner's right to practice his religion may violate the Free Exercise Clause but does not alone necessarily equate to cruel and unusual punishment. *See LaFevers v. Saffle*, 936 F.2d 1117, 1119-20 (10th Cir. 1991) (reversing frivolousness dismissal of First Amendment religious-exercise claim based on denial of a vegetarian diet, but affirming frivolousness dismissal of Eighth Amendment claim based on same deprivation). We affirm the district court's dismissal of Mr. Tennyson's Eighth Amendment claims.

2. **Deprivation of Property Without Due Process**

Mr. Tennyson alleged that Officer Sparks intentionally and maliciously removed his family photos from his cell during the shakedown, depriving him of his property without procedural due process in violation of the Fourteenth Amendment.

The district court dismissed this claim as legally frivolous because Mr. Tennyson has an adequate post-deprivation remedy. We agree.

An inmate's "Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees." *Smith v. Colo. Dep't of Corrs.*, 23 F.3d 339, 340 (10th Cir. 1994). The Supreme Court applied this rule to intentional acts by state employees in *Hudson v. Palmer*, 468 U.S. 517 (1984), in which an inmate alleged that, during a shakedown, an officer intentionally destroyed the inmate's noncontraband personal property. *Id.* at 529. The Court rejected the inmate's contention that his due process rights were violated, noting the availability of a post-deprivation remedy and stating that "[t]he controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Id.* at 534. It reasoned that, "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Id.* at 533. Thus, an adequate post-deprivation remedy satisfies due process when the claim involves "random, unauthorized acts by state employees." *Smith*, 23 F.3d at 341. But post-deprivation remedies are insufficient to satisfy due process when the claim involves "a property deprivation authorized by an established state procedure, [which] normally requir[es] a predeprivation hearing." *Id.*

Mr. Tennyson does not contend that his post-deprivation remedies are inadequate. Nor does he claim that Officer Sparks' conduct was authorized or that he was acting pursuant to an established state procedure. He argues instead that he was entitled to a pre-deprivation hearing because Officer Sparks' deprivation of his property was foreseeable and preventable, and therefore not "random." In his amended complaint, Mr. Tennyson asserted that KCCC was aware that Officer Sparks had repeatedly engaged in similar conduct. But in support of this contention, he alleged only one other instance in which Officer Sparks confiscated another inmate's photograph. These allegations do not establish the practicality of affording Mr. Tennyson a pre-deprivation hearing before Officer Sparks allegedly removed Mr. Tennyson's photographs. We affirm the district court's dismissal of this claim as legally frivolous.

### C. *Issues Not Addressed by the District Court*

We agree with Mr. Tennyson that the district court failed to address certain allegations in his amended complaint. First, the court did not consider his claim that Officer Carpenter and the Superiors denied him procedural due process in connection with his suspension from the prison choir. Also, in dismissing all claims against Warden Everett and Executive Director Werholtz, the court failed to address all of Mr. Tennyson's allegations against them, including his claims that the constitutional violations were caused by their failure to supervise, train, and discipline subordinates, and by customs, practices, and policies established by a supervisor and

- 19 -

followed by his subordinates. "Where an issue has been raised, but not ruled on, proper judicial administration generally favors remand for the district court to examine the issue initially." *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1238 (10th Cir. 2005). As part of our remand, we direct the district court to consider these allegations.[6]

### D. *Denial of Motions for Appointment of Counsel*

Mr. Tennyson filed two motions asking the district court to appoint counsel to represent him. The district court denied both motions as premature. Soon after denying his second motion, the district court dismissed Mr. Tennyson's amended complaint as legally frivolous. He contends that the district court erred in denying his motions to appoint counsel.

Mr. Tennyson, "as a civil litigant, has no Sixth Amendment right to counsel," but "a court has discretion to request an attorney to represent a litigant who is proceeding in forma pauperis." *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006). The district court did not abuse its discretion in denying Mr. Tennyson's motions as premature. It had not yet screened his amended complaint pursuant to § 1915(e)(2). On remand, Mr. Tennyson may file a new motion for appointment of counsel or request the court to reconsider its denial of his earlier motions. *See Johnson*, 466 F.3d at 1217. We deny as moot Mr. Tennyson's motion for appointment of counsel in this appeal.

_____

[6] We take no position on the merit of these claims.

## IV. **CONCLUSION**

In summary, we affirm the district court's dismissal of Mr. Tennyson's Eighth Amendment claims against all defendants and his procedural due process claim against Officer Sparks as legally frivolous. We also affirm, because Mr. Tennyson does not contest these claims on appeal, the court's dismissal of Mr. Tennyson's claims under 42 U.S.C. §§ 1985 and 1986, his claim that Officer Sparks violated the Fourth Amendment's prohibition against unreasonable seizures, and his claims against KCCC. We reverse the district court's dismissal of Mr. Tennyson's First Amendment, RLUIPA, retaliation, and equal protection claims against Officer Carpenter and the Superiors. We also reverse the district court's dismissal of all claims against Warden Everett and Executive Director Werholtz because it failed to consider them, and direct the court to do so on remand. Finally, we direct the court to consider Mr. Tennyson's procedural due process claim against Officer Carpenter and the Superiors.

The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this order and judgment. We grant Mr. Tennyson's motion to proceed on appeal without prepayment of fees and costs and remind him that he is obligated to continue making partial payments until the entire fee and cost amounts are paid in full.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge

- 21 -